655 Veterans Electric v. United States May it please the court, Brandon M. Selinsky on behalf of Veterans Electric, the claimant and appellant, plaintiff appellant, pardon. This is a bid protest case in which the government ordered a contract to an unqualified bidder. The bid from the awardee architectural consulting group or ACG failed to include detailed explanation of how it was going to perform the work identified in the solicitation. The solicitation required that a detailed explanation be included. That part of the solicitation includes five ways in which a detailed explanation might be conveyed in the bid. One of those is by listing experience. ACG did list its experience. Some of that experience included work done at the Wood Cemetery which was the subject of the solicitation. However, nowhere in ACG's bid does it explain how their experience would have allowed them to perform that contract. No details on who the personnel would be or what tools would be required. Well, they were the incumbent, right? They were the incumbent on work that was being done. They're correct, Your Honor. And it was similar work? It was a variety of work, Your Honor. They are a general contractor so they oversaw a lot of different things going on in the cemetery including some electrical work. Okay, so I guess, you know, as the Court of Federal Claims pointed out, I mean, obviously, this is a contract for very, very, very small amount of money relative to what we see. This is a contractor who had been performing similar work at least prior to this. Why is it not sufficient for the government to have relied on the representations by that side? And obviously, they knew more about this person than they would about any contractor coming in for the coal because they had substantial experience with that person. Why isn't that fair game? Your Honor, the contractors, ACG's response, their bid, pardon me, their bid was non-responsive to the solicitation. The solicitation asked for details on how they would perform that. That's important because if the government doesn't know how this work is going to be performed, that can drive up costs. That can lead to delays. Obviously, there's been a delay now as a result of that. But for example, ACG doesn't have any electricians on its staff or on its payroll according to their bid. And in fact, one of the evaluations from the government reviewers who reviewed the bids before the award was made indicated that they've worked with ACG and that ACG subs out most of its work. Okay. But they didn't put that in their bid. They didn't indicate whether they would perform it or whether they would get somebody else to perform it. If they don't have somebody ready to perform it, that's what can lead to delays and increased costs. The purpose of this solicitation was best value. And that's going to kind of destroy the idea behind the best value. Well, as for best value, your bid was considerably more, right? It was, Your Honor. Fifty percent more? It was more. Forty-four percent more. That's correct, Your Honor. And that's another part of the problem, actually, is that ACG included a bid that was below what our client believes would be necessary in order to perform this contract. My client doesn't believe it can be performed for that low. And that would be part of the problem in getting somebody to perform this work. But isn't that up to the government to decide? I mean, the government wants this work done. If it had questions about whether or not, and again, I think their answer is that they rely generally on their experience with this contractor, which I don't think you're disputing is something they can consider. Either the government has questions or it doesn't, but it's the one that's evaluating the bid. Whether or not your client thinks that this is impossible to perform, I don't know what we do with that. Your Honor, that's simply probative. It's probative to the issue of whether it's relevant that ACG was not responsive. So ACG didn't explain how they were going to perform this contract. And if the contracting officer can't tell how this entity is going to perform the contract, then they're leaving a lot up to chance. And that chance includes... Well, I don't think anybody can disagree what you're saying generically. But the question is, who is it up to then? Isn't it up to the contracting officer if they don't feel that they have enough information upon which to make a reasonable decision to go back and ask for that explanation? But the fact that they didn't suggest that they thought they had sufficient information. So what are we supposed to do with that? Your Honor, the contracting officer did find that they had sufficient information, but that finding really violated the solicitation. The contracting officer and the two evaluators from just prior to when the award was made all found that not only was ACG technically acceptable, but that they provided a detailed plan in how they would perform. But they didn't. And so they're simply wrong. The government made a finding that they qualified, but they didn't qualify. The criteria for qualifying, other than what was listed in those five different categories, comes up in the evaluations that the two government employees provided just before the award. So those two evaluations indicate that they were looking for an explanation of the personnel and the personnel who would carry out the contract and the tools that would be required. ACG provided neither of those, but those two evaluations said that they did. So they're simply wrong. The contracting officer also indicated that they had provided these and they hadn't. So the basis is invalid from the beginning. Architectural Consulting Group, as I said before, is a contractor. They do have experience doing this kind of work to the extent that doing this work means that they've overseen this kind of work. So they don't have any experience performing the work themselves. And again, that goes to that number five in that list of ways that the bidder could provide detail on how they would be able to perform. Architectural Consulting Group, in their experience, doesn't show that they can perform this kind of work. Whereas Veterans Electric's bid show that they do perform this kind of work regularly. There are some other other arguments that both the government and Veterans Electric have made in this case. And I think that the issue of whether ACG could perform is probably the one that would carry the day. The issue of the NAICS code is probative to the issue of whether ACG would be able to perform this kind of work. So again, the NAICS code, ACG did not list a NAICS code for electrical work, again, indicating that they are not capable of performing electrical work. They might be able to hire somebody to do it, but they cannot do it themselves. So are you relying at all on your Veterans preference argument in that that was inadequately considered? Or is your argument entirely that their proposal was defective and should not have been awarded? Well, okay, so there's one specific thing that they didn't list the NAICS code. What's the requirement that compels that they list it? Are you saying per se, sort of, if you don't list the code, you're out? Absolutely not, Your Honor. Okay, so what are we supposed to do with that information? Okay, they didn't list the code. Obviously, the government didn't think that was an insurmountable problem. What are we supposed to do with that? Your Honor, I don't think that that would carry the day. The failure to list the NAICS code would, again, is simply probative of whether they would be able to do this kind of work. Whether the contracting officer should have been able to look at that bid and say, yes, this person, even though they didn't tell us. So are you pointing to any technical violations that would carry the day? Or are you pointing to a more subjective evaluation that a reasonable contracting officer looking at this, they had not established that they could perform the work and we should revisit that or review that? Your Honor, what we're pointing to is that it's not subjective, it's objective. The contracting officer should have been able to look at ACG's bid and tell whether or not they could perform the work. There's absolutely no way to do that. There's no way to tell that they could perform work that would involve changing out lights or installing lights, only that they have overseen people doing that at some point. So to the extent that it's objective or subjective, I'd call that objective. But that's all they would be required to do under this contract. They don't have to establish that they can do it. They're allowed to hire subcontractors, right? They are, Your Honor, and they did not say whether they were going to do that. And in fact, the record shows that they were not going to do that. There's correspondence in the appendix that show that after the fact, ACG hired a couple of electricians who were licensed. They didn't indicate that anywhere in their bid, so they decided not to bid that out. They decided after the fact to hire non-electricians, indicating that they probably did not have them on before, but there would be no way to tell from the bid anyway. Unless the Court has further questions right now, I don't have any further. Good morning, and may it please the Court. My name is Albert Ayer-Ross on behalf of the United States. The agency's decision to award a contract to ACG in this case was entirely reasonable. It was not arbitrary and capricious because ACG aptly demonstrated its technical qualifications. The Court of Federal Claims and the GAO below both correctly rejected all the Veterans Electric's arguments, and this Court should do the same. The crux of this dispute is whether or not the technical qualifications section in the solicitation, which is listed in appendix page 21, required ACG to provide some sort of written prose or performance plan as is described by Veterans Electric here. What the appellant has done repeatedly here is read non-existent requirements into the solicitation. As Judge Smith found below correctly, what the technical qualifications section of the solicitation requires is for bidders to prove that they are technically qualified to perform the work, and that section expressly provides at least five different ways. And it says, for example. Exactly. For example, five different ways ACG or any other bidder could have done so. In this case, ACG availed itself of at least two. The experience of the company describes some qualifications of technical personnel. ACG was performing work at the site on the very location, Monument Circle in Wood National Cemetery. It provided evidence of electrical general contracting work it had done for projects hundreds of times larger in other locations, and it's at this particular cemetery, which is exactly what was called for in example number one here. Veterans Electric argues that the failure to include the exact NAICS code that was listed in the solicitation is somehow prohibitive of ACG's technical qualifications. That's flatly not true. I know the GAO decisions are not binding anywhere in this court, but this court has repeatedly held that GAO decisions regarding certain contracting areas can be considered expert opinions and they should be prudently considered. The GAO has expressly rejected the notion that a bidder that fails to provide the exact NAICS code that's listed in the solicitation is somehow barred from competing for that solicitation. The only thing a NAICS code really does is indicate the size of the business concern. In this case, Veterans Electric has never disputed that ACG qualifies under the relevant size standard. The size standard here was $15 million in revenue per year, and ACG qualifies under less than $7.5 million. The fact that the NAICS code that ACG provided doesn't indicate the exact same electrical work is not a requirement of the solicitation. And as Judge Prost talked about a moment ago, the question of whether they had electricians on staff or whether they were going to subcontract out any electrical work, the particular electrical work described in the statement of work here, is one of contract administration. There was no requirement in the solicitation, and Veterans Electric has never pointed to anything in the solicitation that would have required ACG to have, before bidding, a certain number of electricians on their staff. They do make one argument... Well, that's kind of an exaggeration of what he said. It doesn't require... He wasn't arguing it required them to have a certain number. He's saying that there was no indication about whether or not they had any staff to do it or they were going to subcontract it. Well, certainly, but I think that the extensive past experience that ACG provided demonstrates that ACG was well-experienced in doing this type of work. And much like a requirement for small businesses, if a certain amount of the contract has to be awarded or performed by a small business, provided that the ACG subcontracted out the work to qualified electricians, that was all that was required. Now, Veterans Electric does point to appendix page 58 to a VA acquisition rule 852.236-291 for the notion that Wisconsin state licenses, electrical licenses, were required somehow. And because ACG did not provide evidence of state electrical licenses, they were, per se, unqualified to do the work here. As we mentioned on brief, the only thing on that page that, in any way, might remotely be described as requiring some license is the section that mentions, if newly entering into a construction activity, the bidder has made all necessary arrangements for personnel, construction equipment, and required licenses. ACG clearly was not newly entering into any construction activity. And as Judge Smith found below, any requirement that the electrical work be performed by personnel who were state licensed as electricians would be one of contract administration and not one of whether ACG was qualified technically under the solicitation. Unless the court has other questions, I'm happy to rest on brief. Thank you, Your Honors. The government has argued, again, that as long as ACG was qualified, then there was no error. As a matter of fact, the solicitation indicates that ACG was required to provide a detailed explanation. So this idea of was there or was there not a performance plan required, whether the solicitation says performance plan or not, is not what we're arguing or not what we're even disputing. There was a requirement that they provide some detailed explanation. That's right from the solicitation. So whether it's a narrative or whether it's using the idea of their experience to provide that detailed explanation, either one would suffice. Their experience does not provide that detailed explanation. The performance plan is actually, that term is used by the government a couple of different places, both before and after the award. Before the award, the performance plan is identified in those two evaluations from the government employees as to whether ACG was technically qualified. It's also mentioned by the contracting officer in the debriefing form afterwards. Both the NAICS code and the licensing issues, again, we're not arguing, Veterans Electric is not arguing that those are required to be produced as part of the bid. We're arguing that if you were to look at the bid and try to determine whether or not ACG was qualified to do this work or whether they were responsive to the solicitation, those two things would work against ACG because neither of them show that they are qualified to perform electrical work. And so you'd not be able to interpret that as being responsive to that requirement for a detailed plan. If the court does not have any other questions, I'd retire. Thank you. We thank both sides. The case is submitted. That concludes our proceedings for this morning.